[841 NYS2d 321]

In the Matter of VILLAGE OF CHESTNUT RIDGE et al., Appellants, et al., Petitioners/Plaintiffs, v TOWN OF RAMAPO et al., Respondents.

Second Department, August 14, 2007

## APPEARANCES OF COUNSEL

*Zarin & Steinmetz*, White Plains (*Michael D. Zarin* and *Jody T. Cross* of counsel), for appellants.

*Holland & Knight, LLP*, New York City (*Robert Bergen* and *Leah Griggs Pauly* of counsel), for Town of Ramapo and others, respondents.

*Feerick Lynch MacCartney, PLLC*, South Nyack (*Dennis E. A. Lynch* of counsel), for Yeshiva Chofetz Chaim of Radin, respondent.

*Rice & Amon*, Suffern (*Terry Rice* of counsel), for Scenic Development, LLC, respondent.

## OPINION OF THE COURT

SPOLZINO, J.P.

The appellants, four villages located within the Town of Ram-

apo and two residents of the Town, challenge the Town's enactment of a local law permitting adult student living facilities in certain residential zones adjacent to the four villages. The Town cross-moved to dismiss the combined amended petition/complaint (hereinafter the amended petition) in this hybrid CPLR article 78 proceeding and declaratory judgment action on the grounds that the four villages do not have legal capacity to sue and that the appellants collectively lack standing to raise the claims asserted here. We conclude that it is within the authority granted by the Legislature to the four villages to sue on the claims that are made here, that Town Law § 264 (4) does not deprive the four villages of either capacity or standing to assert those claims, and that the appellants have standing to assert some, but not all, of the claims that they raise.

The events leading to this litigation began in the spring of 2004, when the Town Board of the Town of Ramapo (hereinafter the Town Board) proposed to enact a local law amending the Town's zoning code to permit, as a conditional use, the construction and operation of "adult student living facilities" in certain residential zones. The proposed law defined an "adult student living facility" as "[h]ousing designated to be used only for adult married students, faculty, spouses and minor children while the adult student is pursuing full time post secondary education at an educational institution." The term "adult student" was further defined to encompass "[f]ull time married students attending a post secondary level educational institution whether for general or religious instruction."

The combined petition/complaint (hereinafter the petition) alleged that the proposed law was intended to address a finding in the Town's recently adopted comprehensive plan that such facilities were necessary to accommodate the growing number of married students attending Orthodox Jewish religious educational institutions in the Town. By virtue of the lot size requirements articulated in the proposed local law, the proposed permitted use was anticipated to be applicable initially only to four sites in the unincorporated area of the Town. Each of those sites is located adjacent to or near the border of one or more of the four villages, and all of those sites are located within two miles of each other.

The Town forwarded the proposed local law to the County of Rockland for its review and recommendations, in accordance with the requirements of General Municipal Law § 239-m, and held a public hearing with respect to the proposed local law on

June 2, 2004. Acting as lead agency pursuant to the New York State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), the Town Board thereafter classified the adoption of the proposed local law as a Type I action under SEQRA, presumptively requiring the preparation of an environmental impact statement (hereinafter EIS). The Town Board nevertheless issued a negative declaration, finding that the enactment of the local law would not have a significant adverse impact on the environment, and thus did not require the preparation of an EIS. Despite several negative comments from the Rockland County Department of Planning, the Town Board, on June 15, 2004, unanimously enacted a modified version of the proposed law as Local Law No. 9 (2004) of Town of Ramapo (hereinafter the adult student housing law).

In October 2004 the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Village of Wesley Hills, all of which are located within the Town of Ramapo, together with, among others, Milton B. Shapiro and Sonya Shapiro, who are residents of the Town, commenced this hybrid CPLR article 78 proceeding and action (hereinafter this proceeding) against the Town, the Town Board, the Planning Board of the Town of Ramapo (hereinafter the Planning Board), and the Board of Appeals of the Town of Ramapo (hereinafter the Board of Appeals), as well as against Scenic Development, LLC, a developer involved in the development of the four sites, and Yeshiva Chofetz Chaim of Radin (hereinafter Chofetz Chaim), an Orthodox Jewish organization that was anticipated to own and operate adult student housing for its members on the four sites (hereinafter collectively the defendants).

Subsequent to the adoption of the adult student housing law, but prior to the commencement of this proceeding, the Town initiated a process leading to the adoption of a comprehensive revision of its zoning law. The local law that was proposed to accomplish that revision included the provisions permitting adult student housing facilities that had been enacted by the adult student housing law, with minor changes. After conducting an environmental review that did not include additional study of the potential impacts resulting from the adoption of the adult student housing law, the Town Board enacted the revised comprehensive zoning law in November 2004. During the same period, Chofetz Chaim applied to the Planning Board for site plan approval to permit the construction of adult student housing on one of the four sites. The Planning Board issued a nega-

tive declaration with respect to the site plan, thus determining that the construction of the facility would not have a significant impact on the environment and, concomitantly, foregoing the preparation of an EIS in connection with that project. Shortly thereafter, with the permission of the Supreme Court, the appellants amended the petition so as to include a CPLR article 78 challenge to the Town Board's adoption of the comprehensive zoning law and the Planning Board's issuance of the negative declaration with respect to the Chofetz Chaim site plan application.

The amended petition asserts thirteen causes of action. The first four causes of action allege that, in adopting the adult student housing law, the Town failed, in four different respects, to comply with the requirements of SEQRA. The fifth and sixth causes of action make similar assertions with respect to the subsequent adoption of the revised comprehensive zoning law. The seventh cause of action alleges that the adult student housing law is inconsistent with the Town's comprehensive plan and thus constitutes impermissible spot zoning. The eighth and ninth causes of action complain of procedural infirmities in the adoption of the adult student housing law under the Municipal Home Rule Law and the General Municipal Law, respectively. The tenth and eleventh causes of action allege constitutional violations, specifically, discrimination on the basis of familial status based upon the exclusion of unmarried adult student housing from the new zoning district, in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution and New York Constitution, article I, §§ 6, 11, and in violation of the First Amendment of the United States Constitution insofar as the adult student housing law is intended to benefit a particular religious community. The twelfth cause of action asserts that the adoption of the adult student housing law is illegal under New York law in that it is not rationally related to the health, safety and welfare of the community. The thirteenth cause of action asserts that the Planning Board failed to take the hard look required by SEQRA in connection with the application for approval of the site plan proposed by Chofetz Chaim for one of the four adult student housing sites.

Prior to answering the amended petition, the Town, the Town Board, the Planning Board, and the Board of Appeals cross-moved to dismiss the amended petition, asserting, inter alia, that the four villages (hereinafter the Villages) did not have

legal capacity to sue and that the appellants collectively lacked standing to raise the claims asserted here. Scenic Development, LLC, and Chofetz Chaim each separately cross-moved for the same relief on the same grounds. The Supreme Court agreed with the defendants, granted the relevant branches of the cross motions, and dismissed the amended petition insofar as asserted by the appellants. This appeal ensued.

■ The first issue presented is the Villages' legal capacity to prosecute this proceeding. "Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity 'concerns a litigant's power to appear and bring its grievance before the court' " (*Silver v Pataki*, 96 NY2d 532, 537 [2001], quoting *Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155 [1994]; *see Matter of Graziano v County of Albany*, 3 NY3d 475, 478-479 [2004]). Capacity to sue can be derived from an express statutory grant, as in the case of a business corporation or unincorporated association (*see Community Bd. 7 of Borough of Manhattan v Schaffer, supra* at 155), or can be inferred, even in the absence of statutory authority, where the power to sue and be sued is a necessary incident of the party's responsibilities (*see Silver v Pataki, supra* at 537-538; *Matter of Graziano v County of Albany, supra* at 480-482). Where there is no statutory authority to sue, and such authority is not necessarily implied from the entity's other powers, however, there is no capacity, and a petition or complaint must be dismissed (*see Community Bd. 7 of Borough of Manhattan v Schaffer, supra* at 157; *Matter of Pooler v Public Serv. Commn.*, 43 NY2d 750 [1977]).

"Being artificial creatures of statute, [governmental] entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (*Community Bd. 7 of Borough of Manhattan v Schaffer, supra* at 155-156; *see Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 5 NY3d 36, 41; *Matter of Graziano v County of Albany, supra* at 478-479). Here, the necessary statutory predicate is provided by Village Law § 1-102 (5), which authorizes villages "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court." This provision constitutes an express grant of legislative authority empowering villages to sue (*see Village of Lansing v Tripham-*

*mer Dev. Co.*, 193 AD2d 919, 920 [1993]; *see also* Village Law § 4-400 [1] [d]; *cf.* Village Law § 4-412 [1]). Thus, it is not necessary to consider whether the Villages' capacity to sue may be inferred as a necessary incident of their municipal responsibilities.

The defendants' argument that some more specific authority is required in order to establish the Villages' capacity to sue rests on two inapposite premises. The first is that the Villages' capacity to sue is somehow limited by the principle that a municipality may not sue the State (*see City of New York v State of New York*, 86 NY2d 286, 293 [1995]). While it is true that a village is a creature of the State and, as such, cannot sue its creator (*id.*), the Villages are not attempting to do so here. The rule does not bar an action by one creature of the State against another. The defendants' assertion that the Villages' ability to sue is limited in the same manner as that of a governmental agency (*see Community Bd. 7 of Borough of Manhattan v Schaffer, supra*; *Matter of Pooler v Public Serv. Commn., supra*) is similarly misplaced. Unlike the plaintiffs in those cases, the Villages here can point to enabling legislation directly empowering them to sue. That is sufficient to overcome the defendants' argument that the Villages lack capacity.

Our holding in *Village of Port Chester v City of Rye* (234 AD2d 453 [1996]) is similarly not implicated here. The issue in that case was whether a village could challenge a traffic regulation adopted by an adjoining city with respect to a street wholly within that city, albeit one that provided access to the village. Although we addressed the city's argument in terms of the authority of the village to sue, the city's motion to dismiss was actually predicated on its assertion that the village lacked standing to sue. The focus of our analysis in that case, which was on the issue that the village sought to raise, rather than on its general corporate powers, makes it clear that the complaint was dismissed there for lack of standing, not the absence of capacity to sue. While *Village of Port Chester v City of Rye* (*supra*) thus arguably has some relevance to the discussion of the Villages' standing here, it does not stand for the proposition that specific legislation is required before a village may commence a lawsuit.

The defendants are correct in asserting, however, that even where the Legislature has conferred capacity to sue, it may take it away. A general power to sue necessarily yields to a "clear legislative intent negating review" (*Community Bd. 7 of Borough of Manhattan v Schaffer, supra* at 156; *see Matter of*

*Town of Riverhead v New York State Bd. of Real Prop. Servs.,* *supra* at 42-43). Here, the defendants identify what appears to be such a limitation in Town Law § 264, which, after establishing various procedural requirements for the adoption of zoning regulations, provides that a village, although among the entities entitled to be heard at a public hearing held by a neighboring town with respect to a proposed zoning change, "shall not have the right of review by a court as hereinafter provided" (Town Law § 264 [4]). The defendants construe this provision as depriving a village of capacity to challenge any change in a town's zoning regulations, regardless of the manner in which the change is accomplished or the nature of the challenge. Although statutory language expressly depriving a party of a "right of review" would appear to raise an issue of capacity (*see* *City of New York v State of New York, supra* at 293), the Court of Appeals has addressed the corresponding provision of the Village Law (*see* Village Law § 7-706 [3]) as presenting, instead, an issue of standing (*see* *Town of N. Hempstead v Village of N. Hills,* 38 NY2d 334 [1975]). Consistent with this approach, we conclude that while Town Law § 264 (4) may be of concern in addressing the issue of the Villages' standing, it does not limit the capacity to sue that they enjoy by reason of Village Law § 1-102 (5).

The legislative history of Town Law § 264 (4) evidences a clear legislative intent that zoning changes made under the Town Law be insulated from legal challenges by neighboring municipalities. The language in issue was introduced into the Town Law in 1956 (*see* L 1956, ch 83), apparently after some controversy as to the proper role of adjoining municipalities in the zoning process. Prior to the 1950s, the Town Law, as well as the Village Law, required that a municipality seeking to adopt a zoning law first hold a public hearing "at which parties in interest and citizens shall have an opportunity to be heard" (Town Law § 264, as added by L 1932, ch 634; *see* Village Law § 178, as added by L 1923, ch 564). These statutes did not, however, address whether such parties might be entitled to judicial review. Beginning in 1952, the Legislature amended these provisions to require that various public agencies, such as regional state park commissions and housing authorities, be notified of proposed zoning changes that might be relevant to them (*see* L 1952, ch 623; L 1954, ch 130). Adjoining municipalities were not initially included in these notice requirements. In 1955, however, the Legislature passed a bill defining adjoining municipalities as

"parties in interest" with respect to municipal zoning changes (1955 NY Senate Bill S2506), but the bill was vetoed by Governor Harriman because "a neighboring municipality would be enabled to interfere with practically all acts of the adjoining community which would extend within five hundred feet of the boundary line" (Governor's Veto Mem, Apr. 25, 1955, 1955 NY Legis Ann, at 473). A compromise bill, adopting the language that is in issue here, passed in the following legislative session and was approved by Governor Harriman (*see* L 1956, ch 83), who wrote in doing so: "In the bill now before me the objections which were raised last year have been met, the affected community now has the right to be heard but cannot otherwise interfere with the municipality which is changing its regulations" (Governor's Mem approving L 1956, ch 83, 1956 NY Legis Ann, at 453).

Based upon this legislative history, there can be no real dispute that the Legislature's intent in adopting Town Law § 264 (4) was to allow the adjoining municipality to have some input into its neighbor's planning process, but to deprive it of the ability to impede, through litigation, the decisions of the enacting municipality. Consistent with this, the only authoritative construction of the statute holds that the corresponding provision of the Village Law (*see* Village Law § 7-706 [3]) prohibits a town from commencing a declaratory judgment action to challenge, as unconstitutional, a village zoning ordinance and amendment (*see Town of N. Hempstead v Village of N. Hills, supra*).

The issue that is presented here, however, differs significantly from that which was decided by the Court of Appeals in *Town of N. Hempstead v Village of N. Hills*, since the zoning change at issue here is not a product of the Town's authority under Town Law § 264. Rather, the adult student housing law, formally known as "Local Law No. 9 (2004) of the Town of Ramapo," was, as its name implies, adopted as a local law pursuant to the authority provided by the Municipal Home Rule Law (*see* Municipal Home Rule Law § 20). To hold that the Villages' claims with respect to the adult student housing law are barred by Town Law § 264 (4) would thus require not merely that we enforce the statutory bar and adhere to its interpretation as established by the Court of Appeals, as is our obligation, but that we extend the effect of the statute to preclude all claims by one municipality with respect to the zoning enactments of its neighbors, without regard to the source of the authority by

which that action is taken. Moreover, even if we were to conclude that the restriction imposed by Town Law § 264 (4) applies to judicial review of a local law adopted pursuant to the Municipal Home Rule Law, we would further have to hold, in order to reach the result urged by the defendants, that the statute bars review of statutory claims, including claims under SEQRA, that did not exist at the time when Town Law § 264 (4) was adopted. We conclude that such an extension of its effect is not warranted.

Despite its otherwise expansive reading of Town Law § 264 (4), the Court of Appeals has held that the restriction it imposes is not absolute and must yield when a contrary legislative intent is apparent. The Court of Appeals expressly recognized this in *Town of N. Hempstead v Village of N. Hills (supra)*, by distinguishing its prior decision in *Matter of Town of Bedford v Village of Mount Kisco* (33 NY2d 178 [1973]), and noting the continuing vitality of the holding in that case that an independent statutory basis for standing will overcome the stricture of Town Law § 264 (4) (*see Town of N. Hempstead v Village of N. Hills, supra* at 341). While neither the Municipal Home Rule Law nor the statutes upon which the Villages' causes of action are predicated has expressly granted standing to an adjoining municipality to challenge the adoption of a local law, their history and purpose provide a sound basis for reaching the conclusion that such a legislative intent may safely be inferred.

In 1963, almost eight years after the Legislature adopted the language of Town Law § 264 (4) upon which the defendants rely, the voters approved New York Constitution article IX, granting significant additional authority to local governments. The Municipal Home Rule Law (*see* L 1963, ch 843) and its companion, the Statute of Local Governments (*see* L 1964, ch 205), were adopted by the Legislature to implement these new provisions (*see Holt v County of Tioga*, 56 NY2d 414, 417-418 [1982]). The Municipal Home Rule Law provides, among other things, that a town is empowered to adopt local laws relating to its property, affairs, and government, as long as those laws are not inconsistent with the terms of the state constitution or any general law (*see* Municipal Home Rule Law § 10 [1] [i]). This grant includes the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law (*see Matter of Dalrymple Gravel & Contr. Co. v Town of Erwin*, 305 AD2d 1036 [2003]; *Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg*, 229 AD2d 877 [1996]; *Kasper v Town*

*of Brookhaven*, 142 AD2d 213, 217 [1988]; *Matter of Schilling v Dunne*, 119 AD2d 179, 184 [1986]; *North Bay Assoc. v Hope*, 116 AD2d 704, 706 [1986]; *Village of Savona v Soles*, 84 AD2d 683 [1981]; *Yoga Socy. of N.Y. v Incorporated Town of Monroe*, 56 AD2d 842, 843 [1977]). Considering the fact that the Municipal Home Rule Law was adopted at a time when the dispute that led to the language of Town Law § 264 (4) here at issue was within memory, the absence of any corresponding provision restricting the standing of adjoining municipalities to challenge zoning changes adopted in that manner is a telling indicator of the Legislature's intent that there be no such limitation.

The case for refusing to extend the effect of Town Law § 264 (4) to claims raised under SEQRA is more compelling. Even within the context of its decision in *Town of N. Hempstead v Village of N. Hills (supra)*, the Court of Appeals recognized the potential for inconsistency between an interpretation of Town Law § 264 (4) that would deny a neighboring municipality the right to review a zoning change that may affect it and that Court's identification, a few weeks earlier, in *Berenson v Town of New Castle* (38 NY2d 102 [1975]), of the need for regional planning (*see Town of N. Hempstead v Village of N. Hills, supra* at 341). In reaching its decision in *Town of North Hempstead*, however, the Court of Appeals had no occasion to consider the impact of SEQRA, which had been enacted in August 1975, but did not become effective until the following September (*see* L 1975, ch 612, § 2; L 1976, ch 228, § 4), or of the regulations implementing SEQRA, which were not initially filed until March 1976 (*see* Historical Note following 6 NYCRR 617.1). Thus, although the Court of Appeals expressly declined in *Town of North Hempstead* to allow the Town's suit to proceed, under the principles of environmental standing that were then developing, that decision cannot be read as precluding a SEQRA challenge to a change in zoning regulations (*see Town of N. Hempstead v Village of N. Hills, supra* at 340-341).

SEQRA, in fact, permits just such a challenge. By defining the term "agency" to include the governing body of any political subdivision of the State (ECL 8-0105 [2], [3]) and the term "action" to include any project or activity "directly undertaken by any agency" or "involving the issuance to a person of a . . . permit" (ECL 8-0105 [4] [i]), SEQRA clearly applies to local zoning determinations (*see* 6 NYCRR 617.1 [c]). SEQRA does not expressly define, however, the role of neighboring municipalities in the SEQRA review process. In addressing the broader

issue of public participation in that process, the statute provides only that the draft environmental impact statement shall be "made available to the public . . . prior to acting on the proposal which is the subject of the environmental impact statement," leaving the particulars of notice, standing, and related issues to the regulations to be promulgated by the Commissioner of the New York State Department of Environmental Conservation (hereinafter the DEC) (ECL 8-0109 [6]; *see* ECL 8-0113 [2] [f], [i]).

The DEC's SEQRA regulations developed the distinction between an involved agency, which is "an agency that has jurisdiction by law to fund, approve or directly undertake an action" (6 NYCRR 617.2 [s]), and an interested agency, which is "an agency that lacks the jurisdiction to fund, approve or directly undertake an action but wishes to participate in the review process because of its specific expertise or concern about the proposed action" (6 NYCRR 617.2 [t]). Critically, the regulations make no provision respecting the entitlement of an interested agency to judicial review, other than that "[a]n 'interested agency' has the same ability to participate in the review process as a member of the public" (*id.*). That ability to participate, of course, includes the right, in accordance with the applicable principles of the doctrine of standing, to seek judicial review of the SEQRA determination. SEQRA thus contemplates that an adjoining municipality that has a concern about an action would have the same right to judicial review as any other interested party. The only conclusion that can reasonably be drawn from this is that the bar to judicial review of zoning changes by adjoining municipalities established by Town Law § 264 (4) does not apply to challenges under SEQRA, and that the right of a municipality to challenge the acts of its neighbors must be determined on the basis of the same rules of standing that apply to litigants generally (*cf.* Town Law § 264 [3]).

The issue presented by the doctrine of standing is whether the litigants "should be allowed access to the courts to adjudicate the merits of [the] dispute" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 769 [1991]). The inquiry is twofold. "Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 687 [1996]; *see Matter of Dairylea Coop. v Walkley*, 38 NY2d 6,

10 [1975]). Applying these principles here, we conclude that the Villages have standing to assert the claims that they raise under SEQRA and General Municipal Law § 239-m with respect to the adoption of the adult student housing law and the revised comprehensive zoning law, and that the Village of Wesley Hills has standing to raise the SEQRA claim that is asserted with respect to the Chofetz Chaim site plan application. Moreover, the Shapiros have standing to assert the same causes of action as the Villages, as well as the causes of action alleging that the adult student housing law was not properly enacted under the Municipal Home Rule Law, that it is not consistent with the Town's comprehensive plan, and that it is not rationally related to the health, safety, and welfare of the community. The Shapiros have no standing, however, to challenge Chofetz Chaim's site plan application, and none of the appellants have standing to raise the constitutional claims that have been asserted.

Municipal Home Rule Law § 20 articulates the particulars of the notice, hearing, voting, filing, and publication requirements for the enactment of a local law. The purpose of these requirements is to ensure that when a town exercises the police power that has been granted to it, it does so in a manner that provides ''a reasonable opportunity . . . for the presentation to and consideration by the [town's board or] council of complete data and arguments for and against the proposed local law'' (*Martin v Flynn*, 19 AD2d 653, 654 [1963]). As residents of the Town and as the owners of property in close proximity to the area subject to the zoning change, the Shapiros are among the persons intended to be protected by these provisions, and are harmed by the Town's alleged failure to comply. They, therefore, have standing to assert a cause of action that these provisions have been violated (*see Matter of Duke & Benedict v Town of Southeast*, 253 AD2d 877 [1998]; *Matter of Andrews v Nagourney*, 41 AD2d 778 [1973], *affd* 32 NY2d 784 [1973]). The Supreme Court should not, therefore, have dismissed the Shapiros' eighth cause of action.

The Shapiros have a similar interest assuring that the Town did not act beyond its zoning authority by adopting a zoning law that is not consistent with the Town's comprehensive plan. Zoning laws operate to impose mutual benefits and restrictions on the parties within the community (*see Topanga Assn. for a Scenic Community v County of Los Angeles*, 11 Cal 3d 506, 517, 113 Cal Rptr 836, 843, 522 P2d 12, 19 [1974]; *Benner v Tribbitt*, 190 Md 6, 20, 57 A2d 346, 353 [1948]; *Bogert v Washington*

*Twp., Bergen County*, 45 NJ Super 13, 31, 131 A2d 535, 545 [1957], *affd* 25 NJ 57, 135 A2d 1 [1957]). This mutuality is maintained by enforcement of the requirement that zoning decisions be made in accordance with the community's comprehensive plan (*see Udell v Haas*, 21 NY2d 463, 469 [1968]). The Shapiros own and reside upon property affected by the mutual benefits and restrictions that are enforced by the comprehensive plan requirement. They thus have an interest that is intended to be protected by the comprehensive plan requirement, and they would be harmed by the Town's failure to act consistently with its comprehensive plan. The Shapiros, therefore, have standing to raise such claims (*see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 409-410 [1987]) and, accordingly, the dismissal of the seventh and twelfth causes of action insofar as asserted by the Shapiros was in error.

The Villages, by contrast, have no interest in the Town Board's compliance with either its comprehensive plan or the procedural requirements of Municipal Home Rule Law § 20. Since the Villages exercise their own zoning authority with respect to property located within their geographical jurisdiction (*see* Village Law § 7-700), they are beyond the bounds of the mutuality of restriction and benefit that underlies the comprehensive plan requirement. They also have, at most, a limited stake in the integrity of the governmental decision-making process in the Town. Because the interests of the Villages are thus related marginally, if at all, to the purposes intended to be promoted by the procedural requirements of Municipal Home Rule Law § 20, they do not have standing to prosecute the seventh, eighth, and twelfth causes of action (*see Mahoney v Pataki*, 98 NY2d 45, 52 [2002]; *Matter of Gizzo v Town of Mamaroneck*, 36 AD3d 162 [2006]; *Matter of Rediker v Zoning Bd. of Appeals of Town of Philipstown*, 280 AD2d 548, 550 [2001]). Those causes of action were, therefore, properly dismissed insofar as asserted by the Villages.

The causes of action alleging a violation of General Municipal Law § 239-m, however, may be asserted by all of the appellants. The purpose of General Municipal Law § 239-m is to "bring pertinent inter-community and county-wide planning, zoning, site plan and subdivision considerations to the attention of neighboring municipalities and agencies having jurisdiction" (General Municipal Law § 239-*l* [2]) and by so doing to facilitate regional review of land use proposals that may be of regional

concern (*see Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra* at 677). Individuals such as the Shapiros, who are affected by a land use determination that is subject to review under General Municipal Law § 239-m, have standing to assert that the enacting municipality has failed to comply with the requirements of that statute (*see Matter of Duke & Benedict v Town of Southeast, supra*). Because adjoining municipalities necessarily have the same interest in the regional review that General Municipal Law § 239-m requires, the Villages also have standing to assert such claims. The appellants' ninth cause of action should not, therefore, have been dismissed.

The appellants' constitutional claims, however, were properly dismissed, since none of the appellants have standing to raise them. Whether a municipality is or is not a person for the purpose of asserting a violation of the Fourteenth Amendment of the United States Constitution (*compare River Vale Twp. v Town of Orangetown*, 403 F2d 684 [1968], *with South Macomb Disposal Auth. v Washington Twp.*, 790 F2d 500, 505 [1986]; *City of S. Lake Tahoe v California Tahoe Regional Planning Agency*, 625 F2d 231, 233 [1980], *cert denied* 449 US 1039 [1980]; *City of New Rochelle v Town of Mamaroneck*, 111 F Supp 2d 353, 364 [2000]), it must still have a personal stake in the outcome of the litigation in order to have standing to raise an equal protection or due process claim (*see Warth v Seldin*, 495 F2d 1187, 1192 n 6 [1974], *affd* 422 US 490 [1975]). The Villages have no such stake in either of the constitutional claims. Similarly, the Shapiros, as a married couple, have no personal interest in the Town's alleged discrimination against the unmarried. While the Shapiros may have an abstract interest in whether the Town is impermissibly discriminating in favor of a particular religion, they have failed to allege any injury as a result of the allegedly unconstitutional conduct, as they are required to do (*see Valley Forge Christian College v Americans United for Separation of Church & State, Inc.*, 454 US 464, 472 [1982]). The Supreme Court therefore properly dismissed, for lack of standing, the tenth and eleventh causes of action insofar as asserted by all of the appellants.

The appellants' remaining causes of action center upon the Town's alleged failure to comply with the requirements of SEQRA. "To establish standing under SEQRA, the petitioners must show (1) that they will suffer an environmental 'injury that is in some way different from that of the public at large,' and (2) that the alleged injury falls within the zone of interest

sought to be protected or promoted by SEQRA" (*Matter of Barrett v Dutchess County Legislature*, 38 AD3d 651, 653 [2007], quoting *Society of Plastics Indus. v County of Suffolk, supra* at 774; *see Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra* at 687; *Matter of Blue Lawn v County of Westchester*, 293 AD2d 532, 533 [2002]).

The Shapiros live immediately across the street from the Patrick Farm site, which is one of the four sites identified in the course of the Town's review processes as subject to development in accordance with the adult student housing law. Such proximity alone permits an inference that the Shapiros possess the requisite interest in the dispute (*see Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra* at 687; *Matter of Barrett v Dutchess County Legislature, supra*; *Matter of Long Is. Contractors' Assn. v Town of Riverhead*, 17 AD3d 590, 594-595 [2005]; *Matter of Rediker v Zoning Bd. of Appeals of Town of Philipstown, supra* at 550). The Shapiros thus have standing to challenge the adoption of the adult student housing law as violative of SEQRA because it is inferred from their proximity to the site that they will suffer environmental injury (*see Matter of SunBrite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, supra* at 413-414; *Golden v Steam Heat*, 216 AD2d 440 [1995]; *Matter of Prudco Realty Corp. v Palermo*, 93 AD2d 837 [1983], *affd on other grounds* 60 NY2d 656 [1983]; *Matter of Marasco v Luney*, 99 AD2d 492 [1984]). The Shapiros do not allege, however, that they reside in close proximity to the Nike site, one of the four sites to which the adult student housing law applies, and the one on which Chofetz Chaim applied for site plan approval in order to construct adult student housing. Since the Shapiros have not alleged any other basis upon which they have suffered injury with respect to that site plan application, therefore, the thirteenth cause of action was properly dismissed insofar as asserted by the Shapiros.

The inference from proximity that supports the standing of an individual or nongovernmental entity, however, does not operate in the same way to confer standing on a municipality. That presumption rests on the unremarkable conclusion that environmental injury is the ordinary consequence of proximity to the source of a significant environmental impact (*see Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428 [1990]; *Akpan v Koch*, 75 NY2d 561, 569 [1990]; *Vinnie Montes Waste Sys. v Town of Oyster Bay*, 199 AD2d 493 [1993]; *Matter of Valhalla Union Free School Dist. v Board of Legislators of*

*County of Westchester*, 183 AD2d 771 [1992]). The residents near a road that will receive substantial additional traffic from a significant development, or the neighbors of an industrial facility that will give rise to smoke or noise, are clearly affected directly by those impacts in a way that others are not (*see Matter of Barrett v Dutchess County Legislature, supra*; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y.*, 259 AD2d 26, 32-33 [1999]; *Matter of Parisella v Town of Fishkill*, 209 AD2d 850, 851-852 [1994]).

A municipality, however, does not suffer from that traffic or noise in the same way. A municipality, as such, neither breathes foul air, nor hears loud noises, nor waits in traffic. As a result, since a municipality is limited to asserting rights that are its own (*see Town of Scarsdale v County of Westchester*, 192 AD2d 517, 518 [1993]), and is not permitted to assert the collective individual rights of its residents (*see Gulotta v State of New York*, 228 AD2d 555, 557 [1996]; *Incorporated Vil. of Northport v Town of Huntington*, 199 AD2d 242, 243-244 [1993]), it cannot be presumed to have suffered environmental injury by reason of its proximity to the source of the impacts. A municipality thus cannot establish its standing merely on that basis.

■ To say that a municipality is not presumed to suffer environmental injury in the same way as an individual, however, does not mean that a municipality can never suffer cognizable environmental injury. We have held that "villages may have standing to sue in appropriate cases" (*Incorporated Vil. of Northport v Town of Huntington, supra* at 243), where they have "a demonstrated interest in the potential environmental impacts of the project" (*Matter of Town of Babylon v New York State Dept. of Transp.*, 33 AD3d 617, 618-619 [2006]). Thus, although we have denied standing to a municipality where it could not demonstrate that it was aggrieved by the determination in issue (*see Village of Port Chester v City of Rye*, 234 AD2d 453, *supra*; *Village of East Hills v Siegel*, 83 AD2d 849 [1981]), we have found a municipality to have standing where a specific municipal interest was articulated (*see Town of Riverhead v Long Is. Light. Co.*, 258 AD2d 643, 644 [1999]).

A municipality's "demonstrated interest in the potential environmental impacts of the project" can be established in several ways. A municipality that has been identified as an involved agency, i.e., an agency with some approval authority with respect to the project (*see* 6 NYCRR 617.2 [s]), for example, has

standing on that basis alone (*see Matter of Town of Pleasant Val. v Town of Poughkeepsie Planning Bd.*, 289 AD2d 583 [2001]). Direct authority over the matter, however, is not required. Municipalities, like individual litigants, have interests to protect, including property interests. In *Town of Riverhead v New York State Dept. of Envtl. Conservation* (193 AD2d 667, 669 [1993]), for example, we held that a town was entitled to litigate a challenge to an action taken by the DEC because the town was an interested property owner. Similarly, in *Matter of Town of Coeymans v City of Albany* (284 AD2d 830 [2001]), the Appellate Division, Third Department, held that where a town alleged that, as a result of a city's siting of a regional waste disposal facility within the town, "an aquifer and other water resources are subject to potential contamination and that Town 'public use facilities, such as schools . . . would be adversely affected by blowing trash, noise and odors, [and] infestations of vectors' because of their proximity to the proposed landfill," the town had standing to challenge the city's compliance with SEQRA because "these alleged adverse effects are peculiar to the Town's role as a municipal agency" (*id.* at 833).

The unique nature of a municipality's environmental interests, however, requires that the inquiry into its environmental standing not be a mechanical one, particularly in light of the established preference that the issues presented by land use disputes be decided on the merits (*see Matter of Barrett v Dutchess County Legislature, supra*), rather than by a "heavy-handed" approach to standing (*see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, supra* at 413; *Matter of Douglaston Civic Assn. v Galvin*, 36 NY2d 1, 6 [1974]). Applying those principles here, and assuming, as we must for the purpose of this motion, that the allegations set forth in the complaint and in opposition to the motion are true (*see Matter of Long Is. Contractors' Assn. v Town of Riverhead*, 17 AD3d 590, 594 [2005]), the Villages have established a "demonstrated interest in the potential environmental impacts" of the adult student housing law sufficient to give them SEQRA standing.

The amended petition alleges that land use in the Villages is mostly low to medium density residential, and that significant parcels of land that could be developed under the adult student housing law adjoin the Villages, including the 200-acre Patrick Farm site and the 4.7-acre Nike site, both of which are surrounded by low density residential uses. The amended petition

alleges that the change in zoning would increase the total number of residential units that may be built on these parcels by a factor of more than 10. It further alleges that the Villages share much of their infrastructure with the Town, and that development under the adult student housing law will generate substantial increases in water and sewage system usage and traffic. In this regard, Jeffrey Osterman, the appellants' expert planner, opined in his affidavit, submitted in opposition to the defendants' cross motions, that development to the maximum potential permitted by the adult student housing law would increase water usage by 12 times over the usage generated by the current zoning. The Rockland County Sewer District, in commenting on Chofetz Chaim's proposed site plan for the Nike site, noted that the increased development, while within the existing capacity of the sewage system, "may lead to an overflow of the Sewer District's facilities in the future." In a similar vein, the Rockland County Commissioner of Planning, in comments submitted to the Town Board pursuant to General Municipal Law § 239-m, asserted that the impact to the community character of neighboring communities with low to moderate density "would be significant" and that, therefore, adult student housing of the type authorized by the adult student housing law should not be permitted "in the immediate proximity of a municipal boundary."

These assertions establish a basis for legitimate concern on the part of the Villages that the development permitted by the adult student housing law will have a substantial detrimental effect on the roads in their community, their shared water supply and sewer systems, and the character of their neighborhoods. They fall short, however, of establishing the property interest that provided the basis for the standing of the municipalities in *Town of Riverhead* and *Town of Coeymans*, since there is no claim that the Villages themselves own or otherwise have responsibility for these facilities.

Nevertheless, a municipality is more than the collection of pavement, pipes, and other improvements that make up its infrastructure. Rather, a village is a local governmental unit with broad powers, conferred not just by legislative grant, but as a matter of constitutional entitlement (*see Town of Black Brook v State of New York*, 41 NY2d 486, 489 [1977]; NY Const art IX). It "is politically a separate municipality, with powers of its own and authority to govern itself as it sees fit, within the limits of the organic law of its creation and the state and federal

Constitutions" (*Village of Euclid v Ambler Realty Co.*, 272 US 365, 389 [1926]).

In the furtherance of this authority, municipal officials exercise a broad array of powers with respect to the nature of the community, including the powers to protect and enhance the "physical and visual environment" (*see* Municipal Home Rule Law § 10 [1] [ii] [a] [11]), and to enact zoning regulations (*see Kasper v Town of Brookhaven,* 142 AD2d at 217; *Matter of Schilling v Dunne,* 119 AD2d at 184; *North Bay Assoc. v Hope,* 116 AD2d at 706; *Yoga Socy. of N.Y. v Incorporated Town of Monroe,* 56 AD2d at 843). It is through the exercise of these powers that they define the character of the community for the benefit of its residents (*see Curtiss-Wright Corp. v Town of E. Hampton,* 82 AD2d 551, 556 [1981]).

Community character is specifically protected by SEQRA. SEQRA requires the preparation of an environmental impact statement with respect to any action that "may have a significant effect on the environment" (ECL 8-0109 [2]). "Environment," for this purpose, includes, significantly, "existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character" (ECL 8-0105 [6]). The criteria by which the significance of a project is determined include "the creation of a material conflict with a community's current plans or goals as officially approved or adopted" and "the impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources or of existing community or neighborhood character" (6 NYCRR 617.7 [c] [1] [iv], [v]). "The impact that a project may have on . . . existing community character, with or without a separate impact on the physical environment, is a relevant concern in an environmental analysis" (*Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 366 [1986]).

The power to define the community character is a unique prerogative of a municipality acting in its governmental capacity. All of the other incidents of local government, including its electoral and legislative processes, management policies, and fiscal decisions, are ultimately aimed at determining and maintaining the community that its residents desire. It is the right to continue to exercise that authority which the Villages assert here, in the face of the potential threat posed by the Town's action with respect to the property along the Villages' borders. Substantial development in an adjoining municipality can have a significant detrimental impact on the character of a com-

munity (*see Matter of National Merritt v Weist*, 41 NY2d 438, 444 [1977]; *Matter of Holmes v Brookhaven Town Planning Bd.*, 137 AD2d 601, 604 [1988]), thereby limiting the ability of the affected municipality to determine its community character in ways far more important than might the traffic concerns at issue in *Village of Port Chester v City of Rye* (*supra*) or the individual variance that was challenged in *Village of East Hills v Siegel* (*supra*). Thus, unlike the solid waste generation fee at issue in *Incorporated Vil. of Northport v Town of Huntington* (*supra*), the Villages sue here not to assert a claim that belongs to their residents individually but, rather, to protect their unique governmental authority to define their community character. The Villages have thus established a "demonstrated interest in the potential environmental impacts" of the adult student housing law, and they therefore have standing to seek judicial review of the SEQRA process that resulted in its adoption. Because it is only the Village of Wesley Hills, however, that has alleged any such interest as to the Chofetz Chaim site plan application, it is only that village that has established the requisite standing to pursue the thirteenth cause of action.

Finally, the harms alleged by the appellants are not speculative and the interposition of their causes of action are not premature. The appellants suffered actual and concrete harm, and thus became aggrieved, when the adult student housing law was enacted, at which point the Town Board committed itself to a definite course of future action, notwithstanding the fact that no site plan for the development of any particular site had by then been, or has yet to be, approved (*see Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 317 [2006]; *Matter of Young v Board of Trustees of Vil. of Blasdell*, 89 NY2d 846, 848-849 [1996]; *Matter of Save the Pine Bush v City of Albany*, 117 AD2d 267, 269-270 [1986], *affd* 70 NY2d 193, 201-203 [1987]; *Matter of J.B. Realty Enter. Corp. v City of Saratoga Springs*, 270 AD2d 771, 773 [2000]; *Matter of Price v County of Westchester*, 225 AD2d 217, 220 [1996]; *Matter of Wing v Coyne*, 129 AD2d 213, 216-217 [1987]; *Avy v Town of Amenia*, 4 Misc 3d 1020[A], 2004 NY Slip Op 50972[U] [2004], *affd* 27 AD3d 557 [2006]).

Accordingly, the Supreme Court correctly dismissed the appellants' tenth cause of action, as well as the seventh, eighth, eleventh, and twelfth causes of action insofar as asserted by the Villages, but incorrectly dismissed the first through sixth and ninth causes of action insofar as asserted by the Villages. The

Supreme Court improperly dismissed the first through ninth, and twelfth causes of action insofar as asserted by the Shapiros, and improperly dismissed the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, but properly dismissed the thirteenth cause of action insofar as asserted by the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Shapiros.

Thus, the order and judgment is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages and substituting therefor provisions denying those branches of the cross motions, by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the Shapiros and substituting therefor provisions denying those branches of the cross motions, and by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, and the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages, the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the Shapiros, and the thirteenth cause of action insofar as asserted by the Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.

The parties' remaining contentions are without merit.

RITTER, COVELLO and BALKIN, JJ., concur.

Ordered that the order and judgment is modified, on the law, (1) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth

causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions, (2) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and substituting therefor provisions denying those branches of the cross motions, and (3) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.